**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


ROY MCSWAIN                                                              **PLAINTIFF**

**VERSUS**                                     **CIVIL ACTION NO. 2:08cv136KS-MTP**

**SUNRISE MEDICAL, INC., PLANET MOBILITY.COM,
INC., QUICKIE DESIGNS, INC., AND JOHN DOES 1-10**          **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment [Doc. #63]

(November 16, 2009), memorandum in support [Doc. #64], and Supplement to Motion for

Summary Judgment [Doc. #66] filed by Defendants Sunrise Medical, Inc. and Quickie Designs,

Inc.   The Motion is opposed by Plaintiff Roy McSwain [Docs. # 68 & 69].   The court, having

reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully

advised in the premises, finds that the summary judgment motion should be granted.   The court

specifically finds as follows:


## I. BACKGROUND

In February 2006, Plaintiff Roy McSwain ordered a Quickie LXI custom wheelchair via

telephone from Planetmobility.com.  After receiving the order, Planetmobility.com contacted

Sunrise Medical to build the new wheelchair to order and ship it directly to McSwain.

Upon delivery in March 2006, McSwain immediately noticed that the new chair did not

have anti-tip tubes like the Quickie 2 wheelchair he had been using since 1994.  He also noticed

that the wheelchair had solid front wheels instead of the pneumatic front casters he had ordered.

His son, Jeremy, who helped him unpack the wheelchair, stated in his deposition that his father not only noticed the lack of anti-tip tubes, but mentioned that he had ordered them, that he needed them, and that he considered taking the anti-tip tubes off the old wheelchair and installing them on the new one, but that they did not fit due to differences in construction. *See* Mot. Summ. J., Ex. A, Jeremy McSwain Dep. at 10 [Doc. # 63-2].

Despite noticing the differences between his new and old wheelchair and despite the warning on the cover of the Instruction Manual urging "BEFORE USING THIS WHEELCHAIR READ THIS ENTIRE MANUAL," McSwain did not read the manual. McSwain has testified that he saw the manual but decided that he did not need to read it since he had been operating a wheelchair for years. *See id.*, Ex. C, Roy McSwain Dep. at 86-87, 89-90 [Doc. # 63-2]. Instead, McSwain immediately began riding the chair around his home. When McSwain attempted to exit through the front door over the 1.25 inch threshold he tipped backwards, hitting and injuring his head and shoulders. McSwain filed his complaint on June 20, 2008, against Defendants Quickie, Sunrise, and Planetmobility.com raising claims of negligence, gross negligence, breach of warranty, and product liability including failure to provide adequate warning and defective design.

Sunrise and Quickie (collectively "Sunrise") claim that McSwain's product liability claims must fail because he has not presented evidence of a feasible alternative design or that the wheelchair failed to perform as expected. Also, he knew that the chair did not have anti-tip tubes and knew that without them he could tip over backwards, and thus, they argue, the hazard was open and obvious. They claim that he assumed the risk of injury when he used the wheelchair despite knowledge of the dangerous condition and without having read the

Instruction Manual. They allege that the ignored warnings were adequate and that no alleged

inadequate warning proximately caused the accident. Sunrise argues that McSwain's claims of

negligence and gross negligence are subsumed into the Mississippi Products Liability Act

(MPLA) and should be dismissed. Finally, Sunrise argues that there is no factual or legal basis

for McSwain's breach of warranty claims.


## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where

"the pleadings, depositions, answers to interrogatories and admissions on file, together with

affidavits, if any, show that there is no genuine dispute as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is

itself a question of law that the district court is bound to consider before granting summary

judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence

and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a

jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly

probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91

L.Ed.2d 202, 106 S.Ct. 2505 (1986).

"Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not

limited to that role." *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222

(5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Mun. Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on

unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e); s*ee also Union Planters Nat'l Leasing*, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court," *Topalian* 954 F.2d at 1137, "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment." *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Prop., Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## III. LAW AND APPLICATION

In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### A. Product Liability

The Mississippi Products Liability Act governs actions for damages caused by a product. MISS CODE ANN. § 11-1-63. To recover under this Act, the claimant must prove by a preponderance of the evidence that when the product left the control of the manufacturer or seller:

(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

MISS CODE ANN. §11-1-63(a)(i-iii).  McSwain has made a claim under § 11-1-63(a)(i)(2) and

(3): failure to contain adequate warnings and defective design.


## 1. Defective Design

To show defective design under § 11-1-63(a)(i)(3), a claimant must prove that:

(i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm.  A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS CODE ANN. § 11-1-63(f)(i) & (ii).  The first element, that Sunrise knew of the danger, is

undisputed, since they warned of the risk of rear tip-over and recommended anti-tip tubes in the

Instruction Manual.  *See* Memo. Supp. Mot. Summ, J. 7 [Doc. # 64].  Instead, Sunrise argues that

McSwain cannot demonstrate the two requirements set forth in (ii): that the wheelchair failed to

function as expected and that a feasible design alternative existed.

Taking the two requirements in reverse order, the Court finds that McSwain has

presented enough evidence to demonstrate a genuine issue of material fact regarding whether a feasible alternative design was available. The Mississippi Supreme Court has held that "the mere mention of a design alternative by an expert comes well-short of lending evidentiary guidance to a court." *Williams v. Bennett*, 921 So.2d 1269, 1275 (Miss. 2006) (granting summary judgment because plaintiff failed to offer proof of feasible alternative design that would prevent the harm). Mississippi law does not require manufacturers to design a "crashworthy, accident-proof or foolproof vehicle" or to "incorporate into his product every innovation which ... might have rendered the product more safe." *Cooper v. General Motors Corp.*, 702 So.2d 428, 442 (Miss. 1997).

McSwain has presented an alternative design– the wheelchair with the optional anti-tip tubes provided as standard equipment– that would have prevented the harm. Further, McSwain has offered some evidence that the addition of anti-tip tubes would not impair the "utility, usefulness, practicality, or desirability" of the wheelchair. Specifically, his expert, Roger Link, stated in his deposition that anti-tip tubes were available from Sunrise for the cost of $45.90 to $135.00. Defs.' Mot. Strike Expert, Ex. D, Link Dep. at 117 [Doc. # 61-3]. He also showed that other manufacturers provide anti-tip tubes as standard equipment on their wheelchairs by presenting several print-outs from wheelchair sales internet sites. *Id.* at 118-127. Sunrise argues that McSwain has not shown that standard anti-tip tubes would prevent harm "without impairing the utility, usefulness, practicality or desirability of the product to users" and that Link's opinion on the matter is unreliable because he lacks experience in wheelchair use and design. However, the Court's task at this stage is not to weigh the evidence and determine if the alternative design is feasible, but only to determine if the non-moving party has presented enough evidence to

create a genuine issue of material fact.

Regardless of whether McSwain has proven a feasible alternative design, the Court finds that McSwain has not met the other requirement– to show that the wheelchair failed to function as expected. This provision codifies the consumer expectation test, which provides that a plaintiff cannot recover for injury caused by a product when, "applying the knowledge of an ordinary consumer [he] saw a danger and could have appreciated that danger." *Smith v. Mack Trucks, Inc.*, 819 So.2d 1258, 1263 (citing *O'Flynn v. Owens-Corning Fiberglas*, 759 So.2d 525 (Miss. Ct. App. 2000)). In *Clark v. Brass Eagle, Inc.*, 866 So.2d 456, 462 (Miss. 2004), a products liability claim was brought against a paintball gun manufacturer after a teen was hit in the eye and injured during a "paintball war" during which teens shot at other teens' moving and parked cars. The Mississippi Supreme Court affirmed the trial court's grant of summary judgment after finding that the guns "did not malfunction, and operated to [the teenagers'] expectations." *Id.* While the teens did not necessarily expect an eye injury, they did know that it was "common sense" that you should not shoot someone in the eye and that, despite knowing protective eyewear was available to prevent injury, they decided not to use them.

It is also clear that McSwain, who could be considered an ordinary user of wheelchairs, understood the purpose of anti-tip tubes and understood that he needed them. His son testified in his deposition that they attempted to remove the anti-tip tubes from the old chair and install them on the new one, although they soon discovered that the old tubes were not compatible with the new chair. Like the teenagers in *Clark*, McSwain may not have foreseen the consequences– that he would tip backwards– but he was aware of the availability and function of safety equipment and chose to ride in the chair without it. Just as the teenagers knew that shooting someone in the

8

eye was dangerous and that safety goggles would help prevent the danger, McSwain knew that leaning back in a chair can cause rear tip-over, a danger that he knew could be prevented through the use of anti-tip tubes.    While McSwain did not intend to tip over, he has not presented any evidence that the wheelchair did not function as he expected.

Finally, even if McSwain could prove both of the two elements is § 11-1-63(f)(ii), the Court finds that Sunrise is not liable under the defense to a defective product claim provided by § 11-1-63(d).  This provision states:

> In any action alleging that a product is defective pursuant to paragraph (a) of this section, the manufacturer or seller shall not be liable if the claimant (i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) appreciated the danger in the condition; and (iii) deliberately and voluntarily chose to expose himself to the danger in such a manner to register assent on the continuance of the dangerous condition.

MISS. CODE. ANN. § 11-1-63(d).  Often, assumption of risk is a question of fact for the jury, but "in certain circumstances the facts may show as a matter of law that the plaintiff understood and appreciated the danger." *See Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1041 (Miss. 2007) (quoting *Herod v. Grant*, 262 So.2d 791, 783 (Miss. 1972)).  In *Green*, the Mississippi Supreme Court upheld summary judgment for the manufacturer of a mule boy, a tractor attachment that transfers cotton from the picker to a module builder for compacting.  *Id.* at 1044. The farm hand that was operating the mule boy lost three fingers when he approached the machinery and its moving chains and then lost his balance.  *Id.* at 1035.  The court held that the farm hand knew and appreciated the dangers associated with the moving chains, which were an open and obvious hazard, but that he ignored the hazard when he approached the machinery without turning it off.  *Id.* at 1044.

Here, McSwain immediately noticed that the chair did not include anti-tip tubes.  He and

his son immediately tried to install the tubes from his old chair onto his new one because McSwain recognized that he needed them. Despite his recognition that the chair did not have the safety feature he needed, McSwain voluntarily decided to ride around in it. The Court therefore finds that McSwain assumed the risk of using a chair without anti-tip tubes as a matter of law, and summary judgment should therefore be granted as to this claim.

### 2. Inadequate Warnings

To show inadequate warning under subsection (a)(i)(2), a claimant must prove that:

> (i) . . . the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.
>
> (ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; . . .

MISS. CODE ANN. § 11-1-63(c)(i) & (ii). The claimant must also show that the inadequate warning rendered the product "unreasonably dangerous to the user" and that the inadequate warning proximately caused the damages to the claimant. MISS. CODE ANN. § 11-1-63(a)(ii) & (iii). "In Mississippi, a warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against." *Austin v. Will-Burt Co.*, 361 F.3d 862, 868 (5th Cir. 2004) (citing *Cather v. Catheter Tech. Corp.*, 753 F. Supp. 634, 640 (S.D. Miss. 1991)). "The presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages." *Palmer v. Volkswagen of Am., Inc.,* 904 So. 2d 1077 (Miss. 2005); *see also 3M Co. v. Johnson*, 895 So.2d 151, 166 (Miss. 2005) (citing *Rogers*

*v. Elk River Safety Belt Co.*, No. CIV 1:95cv115-D-D, 1996 WL 671316 at *2 (N.D. Miss. Sept. 20, 1996) (stating that even if the operator does not read the warnings, "the seller may reasonably assume that they will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.").

Some jurisdictions consider the placement or location of the warning when considering whether or not it is adequate. *See, e.g., Ware v. Whiting Corp.*, No. 4:05cv01334 at *4, 2007 WL 2409751 (E.D. Mo. 2007) (discussing Missouri law which considers "the placement of the warning, its language and how it may or may not impress the average user" in determining adequacy of warning) (citing *Brown v. Bay State Abrasives*, 821 S.W.2d 531, 533 (Mo. Ct. App. 1991)). The MPLA does not expressly require consideration of the placement of a warning in determining its adequacy, nor do the parties cite any cases that support consideration of the warning's placement. The Mississippi Supreme Court has, however, recognized that "in some inadequate warning cases, 'the very nature of the alleged breach is such that it causes a potential plaintiff to fail to read the warning which causes his injury' [and that in such a case,] the warnings are potentially inadequate because they are presented in a manner that prevents a customer from reading them and being warned.'" *Palmer v. Volkswagen of America, Inc.*, 904 So.2d 1077, 1085 (Miss. 2005) (quoting *E.R. Squibb & Sons, Inc. v. Cox,* 477 So.2d 963, 970 (Ala. 1985)).

In this case, Sunrise warned about rear tip-over on pages 7, 8, 12, 13, 15, 16, 17, and 25 of its Manual. Memo. Supp. Summ. J. 19 [Doc. # 64]. Following are two examples of the warnings given in the Manual:

### D.  HOW TO AVOID A FALL OR TIP OVER
### ! WARNING

If you fail to heed these warnings, a fall or tip over may occur and cause severe injury to you:

1. Start slowly with an easy, smooth first stroke.  If you are used to a different chair, you may use too much force and tip over.

2.  Have someone help you until you know what can cause a tip over and how to avoid doing so. Never try a new maneuver on your own until you are sure you can do it safely.
. . .

4.  Read Section VII- **"WARNINGS FOR SAFE USE."**  There you will learn how to avoid a fall or tip over while you:
* Dress or change clothes
* Do a "wheelie"
* Handle doorways and obstacles
. . .

Mot. Summ. J., Ex. E at 8 [Doc. # 63-3].

### A.  ANTI-TIP TUBES (OPTIONAL)
### ! WARNINGS

If you fail to heed these warnings, a fall or tip over backward may occur and cause severe injury to you or others.

1.  Quickie recommends the use of anti-tip tubes:
* On all chairs, unless you are a skilled rider and can do a "wheelie" at will.
* Each time you modify or adjust your chair.  The change may make it easier to tip backward.  Use anti-tip tubes until you adapt to the change and are sure that you are not at risk of tipping over.

*Id.* at 25.  The warnings in the manual specifically warned of the dangers of rear tip over when operating a new chair or attempting to do a wheelie, and thus, following *Austin*, the warning was adequate because it warned of the specific risk of injury that McSwain complains occurred.  The warning not only warned of the potential of rear tip over, but also provided explicit directions on how to avoid the possibility of rear tip over.  Further, McSwain cannot prove that the manual's

inadequate warnings proximately caused his injury because McSwain voluntarily made the decision to not read the manual. Therefore, under *Palmer,* the contents or omissions within the unread manual could not proximately cause the injuries sustained by McSwain. McSwain has not presented any evidence that Sunrise somehow prevented or discouraged the rider from reading the manual. In fact, the cover of the manual clearly stated that the rider should read the entire manual before use. McSwain has failed to demonstrate a genuine issue that the warnings supplied in the manual were inadequate.

McSwain's argument that he would have heeded the warning if it had been placed on a placard on the chair instead of in the manual is equally unpersuasive. McSwain argues that in general, no one reads manuals, and that long time wheelchair users, in particular, are even less likely to read manuals. *See* Pl.'s Opp. Mot. Summ. J. at 22-23 [Doc. # 68]. McSwain argues that the MPLA requires Sunrise to consider characteristics of the ordinary user when developing its warnings, and that Sunrise should have considered that most users of "a product as relatively simple as a wheelchair" would not read the manual. *Id.* at 23. McSwain intends to testify that if a placard on the wheelchair had warned him to use anti-tip tubes, he would have heeded the warning and not used the chair. *See* Resp. Opp. Mot. Summ. J., Ex. H, McSwain Aff. ¶ 4. [Doc. # 69-9]. Simply put, Mississippi law does not require the best and most obvious warning but only adequate warning, which was provided in this case because Sunrise warned against the very danger of injury that McSwain now complains occurred. As previously stated, nothing prevented McSwain from reading the warnings in the manual except his own belief that he did not need to read the manual based on his prior experience. Regardless, McSwain has not presented any evidence from which a reasonable jury could conclude that ordinary wheelchair

consumers do not read wheelchair manuals or that a warning on the chair would be more effective than the warnings in the manual.[1]  Therefore, McSwain's claim for inadequate warning under the MPLA should be dismissed.

## B. Negligence and Gross Negligence

McSwain's common law negligence claims fail because they are mere restatements of the claims brought under the MPLA, and, like the claims above, are not supported by sufficient evidence.  The MPLA states that it is applicable to "any action for damages caused by a product except for commercial damage to the product itself."  MISS. CODE. ANN. §11-1-63.   The Mississippi Supreme Court has broadly defined a products liability action:

> "Products liability is the name currently given to the area of the law involving the liability of those who supply goods or products for the use of others to purchasers, users, and bystanders for loses of various kinds resulting from so-called defects in those products." W. Page Keeton et al., Prosser and Keeton on Torts § 95, at 677 (5th ed. 1984). "It may, infrequently, rest upon intent; but except in rare instances, it is a matter of negligence, or of strict liability." William L. Prosser, Law of Torts 641 (4th ed. 1971).

*R.J. Reynolds Tobacco Co. v. King*, 921 So.2d 268, 271 (Miss. 2005).  At least one federal court has interpreted this citation to mean that in Mississippi a claim for negligent failure to warn is a "product liability claim" whether it is premised under a strict liability or negligence theory, and therefore the claimant must meet the burdens of proof provided by the MPLA.  *See Jowers v. BOC Group, Inc.*, No. 1:08cv-0036, 2009 WL 995613 at *3-4 (S.D. Miss. Apr. 14, 2009) ("The undersigned believes, however, that the greater weight of the somewhat-mixed authority holds

---

[1]The court in its Order dated January 14, 2010, found that McSwain's mechanical engineer expert, Roger Link, was unqualified to offer an expert opinion as to the efficacy of particular warnings, and excluded his testimony on the subject.

that the negligence-based claims *of product defect* are abrogated by the MPLA."). Several other federal courts have reached a similar conclusion. *See Walker v. George Koch Sons, Inc.,* 610 F.Supp.2d 551, 562-63 (S.D. Miss 2009) ("Plaintiff's negligence claims do not survive apart from their MPLA claims and no negligence jury instructions will be given at trial."); *Lundy v. Conoco, Inc.,* No. 3:05cv477, 2006 WL 3300397 at * 2 (S.D. Miss. Nov. 10, 2006) ("The Court finds that the failure to warn/inadequate warnings claims, regardless of the fact that Plaintiffs labeled one claim 'products liability' and the other 'negligence', are both governed by the [MPLA].").

In a recent decision, the Mississippi Supreme Court stated:

> Defendants argue that Casanova's exclusive remedy is to bring an action under the Mississippi Products Liability Act ("MPLA"). We disagree. We find no statutory requirement that makes the MPLA the exclusive remedy for claims of malfunctioning automobiles. Morever, this Court previously held that breach of implied warranty claims are not barred by the MPLA.

*Watson Quality Ford, Inc. v. Casanova*, 999 So.2d 830, 833-34 (Miss. 2008) (citing *Bennett v. Madakasira*, 821 So.2d 794, 808 (Miss. 2002). In this case the plaintiff sued the manufacturer Ford and the dealer and service provider, Watson Quality, for "negligence, gross negligence, strict liability (manufacture and design), strict liability (failure to warn), breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose" claiming that the steering components in his van were defective causing a wreck and subsequent injury. *Id.* at 833. However, the strict liability and gross negligence claims against Ford and Watson Quality were dismissed by stipulation, as well as the negligence claims against Ford. *Id.* Therefore the only negligence claim that was considered by the court was the negligent repair claim against Watson Quality. *Id.* at 835. Moreover, the Court did not address its previous

decisions holding that negligence claims based on injury due to a product could be duplicative of the related strict liability claims. For example, it has upheld the exclusion of separate jury instructions for product-based negligence and strict liability claims. *See Nunnally v. R.J. Reynolds Tobacco Co.*, 869 So.2d 373, 380 (Miss. 2004); *Hunter v. General Motors Corp.*, 729 So.2d 1264, 1277 (Miss. 1999). Likewise, in *Moss v. Batesville Casket Co., Inc.*, 935 So.2d 393, 406 ¶ 47 (Miss. 2006) the court recognized that the findings on warranty and design defect claims can be dispositive as to related negligence claims.

> The trial court, citing *May v. V.F.W. Post 2539*, 577 So.2d 372, 375 (Miss.1991), also stated that the Plaintiffs failed to prove the elements of negligence: (1) duty, (2) breach of that duty, (3) nexus, causation or proximate cause, and (4) damages. The Defendants contend that the Plaintiffs merely reargue the warranty claims previously discussed under the guise of negligence. We agree. The Plaintiffs fail to present any new discussion or claim that does not relate back to the warranty claims or the products liability claim which have previously been determined to be legally insufficient to survive summary judgment.

Therefore, this court finds that the weight of the case law suggests that while negligence claims can be brought alongside strict liability claims, the findings for the claims brought under the MPLA can be dispositive as to the product-based negligence claims such as negligent failure to warn and negligent design.

McSwain raises four claims of negligence, each of which relate back to the strict liability claims addressed above. The court will look at each in turn.

### 1. Failure to Include Anti-tip Tubes as Standard Equipment

The claim that Sunrise was negligent because it did not include the anti-tip tubes as standard equipment is a restatement of the defective design claim above. McSwain argues that Sunrise was "negligent in selling a wheelchair without a component or part of the wheelchair

that was absolutely necessary in order to make the wheelchair safe." Pl.'s Memo. Opp. Mot. Summ. J. at 2 [Doc. # 68]. Because the manual instructs that anti-tip tubes should be used when a rider is adjusting to a new chair, McSwain argues that the anti-tip tubes should come standard, and could be removed later once the rider determines they are not necessary for him to safely operate the chair. Because this claim goes to the design of a product when it leaves the manufacturer, and injury caused by that design, this negligence claim falls squarely within the scope of the MPLA and is adequately addressed through the defective design claim above.

### 2. Failure to Warn Users of Dangers of Wheelchair Without Anti-tip Tubes

The claim that Sunrise negligently failed to warn users of the danger of the chair without anti-tip tubes is a restatement of the failure to warn cause of action under the MPLA. To support its claim, McSwain restates the facts presented to support its MPLA failure to warn claim. The Court finds that this negligence claim was adequately addressed above.

### 3. Failure to Instruct Supplier Regarding Its Recommended Use of Anti-tip Tubes

McSwain next claims that Sunrise was negligent because it did not properly instruct the supplier, Planetmobility.com, about its recommendations that anti-tip tubes should be used unless the rider knows how to do a wheelie at will and until the rider is accustomed to his new chair. In other words, McSwain contends that Sunrise had a duty to instruct Planetmobility.com to recommend anti-tip tubes when selling the chair.

In support of its claim, McSwain emphasizes the following deposition testimony of Sunrise's expert, Brent Hatch.

Q. So this owner's manual that comes with the chair, you're saying it should be read by everyone before they use chair?
A. Yes, sir.
Q. And when they read that, use anti-tip tubes until you're sure you're not at risk to tip over, they would be reading that with the chair there in front of them without anti-tip tubes if they hadn't chosen that option, correct?
A. There would be no anti-tip tubes.
Q. Then they would have to immediately– in your opinion, the duty of the user is, when they read this on page 13, is get back on the internet or back on the telephone and order the anti-tip tubes before they use the chair?
A. **If there is any question, I would assume that they would discuss it with their supplier or healthcare professional**.

Pl.'s Opp. Mot. Summ. J., Ex. C, Hatch Dep. 65-66 [Doc. # 69-4](emphasis added). McSwain's argument is that Hatch's statement is an admission that Sunrise had a duty to properly advise Planetmobility.com about the recommended use of anti-tip tubes. McSwain does not cite any case law to support a duty for manufacturers to instruct sellers to issue warnings beyond those given directly from the manufacturer.

However, Mississippi law recognizes that sellers can be a "mere conduit" for products. Indeed MISS. CODE ANN. § 11-1-63(h) provides immunity to sellers when they do not exercise "substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought . . . " The stated intent of this section is "to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." MISS. CODE. ANN. § 11-1-63(h). It stands to reason that if Mississippi law allows sellers to be a mere conduit of a product, and, in fact, encourages this by providing them immunity, then manufacturers would not have a duty to instruct the supplier, particularly if the manufacturer's own warnings accompany the product when it is delivered directly from the manufacturer to the consumer. In this case, the built to order chair was delivered directly from Sunrise to McSwain with the Instruction Manual's warnings

18

accompanying the wheelchair.  Again, McSwain is trying to assert that Sunrise was negligent for not providing the best possible warning, an oral warning through the supplier, instead of adequate warning, which is all that is required under Mississippi law.   Because McSwain offers no evidence of a duty for Sunrise to  instruct the seller, this negligence claim must fail as a matter of law.

### 4.  Failure to Adequately Test the Tip Propensity of  the Quickie LXI

Finally, McSwain claims that Sunrise was negligent because its testing was inadequate. Sunrise conducted an incline test which considered the degree of a ramp's incline that would cause tipping, but did not perform any testing for conditions like going over a threshold or other obstacle.  Sunrise tested backwards tipping propensity for its power chairs but not its manual chairs.  McSwain does not cite any Mississippi cases holding a manufacturer liable for negligently failing to test a product.

To support its inadequate testing claim, McSwain cites a Fifth Circuit case for the proposition that "a manufacturer has a duty to test and inspect his product to uncover scientifically discoverable dangers before the product is sold." *Bartley v. Euclid*, 158 F.3d 261, 271 (5th Cir. 1998), *aff'd en banc*, 180 F.3d 175 (5th Cir. 1999).  What McSwain fails to mention is that this case is inapplicable as it applies Texas, not Mississippi, law.  Under Texas law, "while strict liability focuses on the condition of the product, negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in designing and producing its product."  *Id.* (citing *American Tobacco Co., v. Grinnell*, 951 S.W.2d 420, 437 (Tex. 1997). McSwain has not cited any cases supporting this distinction under Mississippi law.  In fact, the

MPLA specifically requires that a plaintiff seeking to prove inadequate warnings must prove by a preponderance of the evidence that "the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought." MISS. CODE ANN. § 11-1-63(c)(i). Likewise, the MPLA requires that a plaintiff seeking to prove defective design must prove by a preponderance of the evidence that "[t]he manufacturer or seller knew, or in light of reasonably available knowledge or *in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought.*" MISS CODE. ANN. § 11-1-63(f)(i) (emphasis added). These provisions speak directly to the actions or inactions of the manufacturer and whether they exercised care in discovering potential dangers of the product, not the final condition of the product. Adequate testing would be one method of discovering these potential dangers. The MPLA's plain language indicates that its provisions apply to all product liability actions, regardless of whether the focus is the manufacturer's care or the product's final condition.

The Court finds the Fifth Circuit's interpretation of Louisiana law in *Pennington v. Vistron Corp.* more persuasive. 876 F.2d 414 (5th Cir. 1989). In this products liability case against cigarette manufacturers, the court stated that:

> [The plaintiff] also claims that the tobacco companies are at fault for failing to test their products sufficiently. This claim is also not actionable per se, but instead is a variation of the failure to warn theory. Under Louisiana law, a duty to warn arises for dangers inherent in a product that are not well-known or obvious. The testing of a product, or the failure to test, is relevant in determining when a manufacturer has breached this duty.

*Id.* at 419 n.6 (citing *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110, 114-15 (La. 1986); s*ee also MacDonald v. Monsanto*, No. 95-40133, 1995 WL 581942 at *2 n.3 (5th Cir. 1995) (citing *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110, 115 (La. 1986)) ("the failure to

properly test must result in either a defect or a failure to warn, and a plaintiff must proceed under one of these theories"). Under this reasoning, the negligence claim for failure to conduct adequate testing would, like a negligence claim for defective design or failure to warn, would be subsumed by the MPLA.

Even if Mississippi law allowed such a negligence claim, causation would be an issue. Assuming that Sunrise conducted all the testing recommended by plaintiff's expert, Roger Link, there is no evidence that Sunrise would have reconsidered its design or warnings. In other words, the results of the testing would, at most, confirm the risk that Sunrise warns of in its manual: that the chair can tip backwards if improperly used. Therefore the claim for negligent testing must fail as a matter of law.

## C. Breach of Warranty

McSwain has failed to show a genuine issue that Sunrise breached a warranty. Under the MPLA, a claimant must prove that "the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product." MISS CODE. ANN. § 11-1-63(a)(i)(4). McSwain has not presented any evidence that Sunrise made an express representation to him about the wheelchair, or any evidence that McSwain relied on any information from Sunrise at all. Indeed, there is no evidence that Sunrise had any interaction with McSwain at all since Planetmobility.com handled the sale. Therefore the court finds that there is no factual or legal basis for a breach of an express warranty claim under the MPLA.

Nor has McSwain presented any evidence that Sunrise breached an implied warranty

under the UCC.  These warranties are not abrogated by the MPLA.  *See Bennett v. Madakasira*, 821 So. 2d 794, 808 (Miss. 2002)).  To succeed under a claim of a breach of the implied warranty of merchantability, the Plaintiff must have provided the seller an opportunity to cure. *Watson Quality Ford, Inc. v. Casanova*, 999 So.2d 830, 833-34 (Miss. 2008).  McSwain has not presented any evidence that he provided Sunrise notice despite his immediate recognition that the wheelchair did not have the anti-tip tubes as he expected.  He did not provide Sunrise with an opportunity to cure by sending compatible anti-tip tubes.  To succeed under a claim for breach of an implied warranty for fitness for a particular purpose, the plaintiff must prove that

> (1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods, and (3) the goods were unfit for the particular purpose.

*Watson Quality Ford, Inc.,* 999 So.2d at 835 (quoting *Garner v. S & S Livestock Dealers, Inc.,* 248 So.2d 783, 785 (Miss. 1971).   As noted above, McSwain has not presented any evidence that Sunrise made any representations or recommendations to him since McSwain dealt exclusively with Planetmobility.com.    Therefore, McSwain cannot show that he relied on Sunrise's judgment to select his wheelchair and this implied warranty claim also fails. Therefore, McSwain's breach of warranty claims must fail, and are properly dismissed.


## IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [Doc. # 63] filed on behalf of the defendants is hereby granted and the plaintiff's complaint is dismissed with prejudice as to Sunrise Medical, Inc. and Quickie Designs, Inc.  Any

other pending motions as to Sunrise Medical, Inc. and Quickie Designs, Inc. are denied as moot.

A separate judgment shall be entered herein in accordance with FED.R. CIV. P 58.


SO ORDERED AND ADJUDGED this the 8th day of February, 2010.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE
